**Application of Timothy CONNORS, for a Writ of Habeas Corpus, Appellee,**

**v.**

**STATE OF SOUTH DAKOTA and Don R. Erickson, Warden, etc., Appellants.**

**No. 19785.**

United States Court of Appeals, Eighth Circuit.

Feb. 19, 1970.

Certiorari Denied June 8, 1970. See 90 S.Ct. 1881.

R. James Zieser, Asst. Atty. Gen. of South Dakota, Pierre, S.D., for appellants, Gordon Mydland, Atty. Gen., on the brief.

Timothy J. Nimick, of Woods, Fuller, Shultz & Smith, Sioux Falls, S.D., for appellee.

Before MATTHES, GIBSON and LAY, Circuit Judges.

MATTHES, Circuit Judge.

Appellants have appealed from the order of the United States District Court for the District of South Dakota granting appellee's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Appellee is serving a ten year sentence in the South Dakota State Penitentiary for the robbery of a food market in Sioux Falls, South Dakota, on July 13, 1961. Appellee's release from prison was stayed pending this appeal.

The following facts are instructive in understanding the issues raised. Sixteen days after the robbery in Sioux Falls appellee and one Richard E. Williams were arrested while attempting to rob a food market in Minneapolis, Minnesota. Both men were interrogated by authorities of the Minneapolis police department concerning their connection with a number of robberies in Minnesota. Williams confessed to several of these crimes and also implicated himself in the Sioux Falls robbery. Appellee refused to give a confession; however, he did make statements which tended to link him with the Minnesota robberies.[1] On the basis of the information uncovered by their investigation, the Minne-

---

1. Captain Egeland of the Minneapolis police department testified at the habeas corpus hearing below that appellee made no incriminating statements in regard to the Sioux Falls robbery.

apolis authorities notified the Sioux Falls police department.

Sometime in early August of 1961 Lieutenant Harry Knott of the Sioux Falls police department traveled to Minneapolis and there interrogated both Williams and appellee. Williams confessed to the Sioux Falls crime, and appellee made statements to Knott during the course of the questioning which connected him to the same offense.

Appellee was convicted of attempted robbery in Minnesota and served the sentence imposed. On May 21, 1965, he was returned to South Dakota to stand trial for the Sioux Falls robbery. The trial commenced on September 28, 1965, and was concluded on September 30, 1965, with appellee's conviction. At this trial Lieutenant Knott testified to the statements made by appellee to him during the Minneapolis interrogation of 1961.[2] Knott further testified that prior to receiving the statements he attempted to advise appellee of his constitutional rights. However, after warning appellee that he need not make a statement, he was interrupted by appellee who stated that he already knew his rights. An appeal was taken to the South Dakota Supreme Court. Although the issue had not been raised at trial, that Court held that the incriminating statements were not obtained by Knott in violation of appellee's constitutional rights, as set forth in Escobedo v. Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed. 2d 977 (1964). State v. Connors, 82 S.D. 489, 149 N.W.2d 65 (1967).

After failing on direct appeal, appellee sought post-conviction relief in the Circuit Court for Minnehaha County, South Dakota, pursuant to 8 S.D.Laws Ann. ch. 23–52 (1967). As grounds for relief he again urged that the statements made to Knott were obtained in violation of his Sixth Amendment right to counsel. The circuit court, relying upon the South Dakota Supreme Court's disposition of the identical issue, denied appellee relief.

The present action was instituted in the United States District Court for the District of South Dakota pursuant to 28 U.S.C. § 2254. Hearings were held and evidence taken on the 13th and 30th of December, 1968. Appellee appeared on the 13th and testified that at no time in his interrogation by either the Minneapolis authorities or Lieutenant Knott had he been advised of his constitutional rights. He denied that he had ever requested counsel and further denied that he had told Lieutenant Knott that he knew his rights. On December 30, the state produced as a witness Captain Egeland, the officer who had interrogated appellee in August of 1961 on behalf of the Minneapolis police department. Captain Egeland had not appeared in any of the proceedings in the state courts. On direct examination, he testified that he had advised appellee of his right to remain silent and to have an attorney. On cross-examination Captain Egeland admitted that appellee had requested an attorney, and had stated that he would make no statement until he had conferred with one.[3] Egeland further admitted that appellee had never consulted with an attorney, nor had the Minneapolis authorities provided him with one. In response to a question from the bench, Egeland testified that appellee made no incriminating statements during his interrogation with respect to the Sioux Falls robbery.

On April 2, 1969, Judge Nichol filed his findings of fact and conclusions of law, 297 F.Supp. 969. After finding

2. These statements were admitted without objection.

3. We can only surmise why this critical evidence was not previously produced by appellee. Apparently, Captain Egeland used a police report to refresh his memory during his testimony. This report was furnished to appellee after the hearing on December 13 and contained information suggesting that appellee had requested counsel. We repeat, however, that at no time in the proceedings did appellee himself testify that he had requested counsel. The report was not admitted into evidence in the hearing.

that appellee had exhausted his state remedies and was properly before the federal court, he held that appellee was denied due process of law in violation of his constitutional rights as a result of the state's failure to provide counsel during the interrogatory process upon appellee's request and the further failure to advise appellee of his right to remain silent after his request for counsel.

In support of its appeal the State of South Dakota urges two grounds of error: (1) that appellee has failed to exhaust his state remedies; (2) that appellee's constitutional rights were not infringed by the interrogations of Captain Egeland and Lieutenant Knott. We consider the issues seriatim.

■■ Whether appellee has exhausted his state remedies as required by 28 U.S.C. § 2254(b), must be resolved in light of the issues which were raised before the federal district court. It is well established that the exhaustion doctrine of 28 U.S.C. § 2254(b) is generally satisfied where the legal issues raised in the federal habeas corpus petition have been presented to and resolved by the highest state court. E. g., Smith v. Peyton, 408 F.2d 1009 (4th Cir. 1968); Thompson v. Peyton, 406 F.2d 473 (4th Cir. 1968); Kennedy v. Sigler, 397 F.2d 556 (8th Cir. 1968). The crux of appellee's contention in the district court was that statements he made during police interrogation in Minneapolis were obtained in violation of his constitutional rights as defined in Escobedo v. Illinois, *supra.* As noted previously, the South Dakota Supreme Court considered and rejected precisely the same issue. State v. Connors, *supra.* There after appellee availed himself of the South Dakota postconviction remedies, again urging violation of rights protected by the *Escobedo* decision. Relief was denied on the basis of the state supreme court's earlier determination. Under these circumstances we believe that appellee has exhausted his state court remedies and the district court properly heard his request for a writ of habeas corpus.

We turn then to the substantial question raised herein—whether state officials violated appellee's Sixth Amendment right to counsel in obtaining incriminating statements during a custodial interrogation of appellee. At the outset we notice what this appeal does *not* involve. First, it does not involve a confession which is challenged as involuntary. It was conceded by appellee's counsel, both before this court and the district court, that the voluntariness of the statements made by appellee to Knott was not in issue. Indeed, in view of the circumstances of this case appellee could hardly take a different position. Appellee was mature and of normal intelligence. There is evidence that shortly before the interrogation he was advised of his right to remain silent and to counsel, and at the interrogation by Lieutenant Knott he stated that he knew his rights. The interrogation itself was of short duration (approximately 30 minutes) and conducted under reasonable conditions. Appellee admitted that there was no effort made to coerce him, either physically or mentally, into making the statements which were elicited. And the interrogating officer employed no falsehoods in inducing the statements. Certainly, under the presently applicable standard, appellee's statements were voluntary. See *e. g.,* Clewis v. Texas, 386 U.S. 707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967); Davis v. North Carolina, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966).

■ Second, we are not here required to judge the constitutionality of the statements by the standards of Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The incriminating statements were obtained in 1961, but the trial at which they were admitted into evidence transpired in late September of 1965. Under these circumstances we apply Escobedo v. Illinois, *supra,* in evaluating the constitutionality of the police practices employed in obtaining appellee's statements. Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

Acknowledgment of *Escobedo's* authoritative weight and application of its teachings are two different matters, as illustrated by the diversity of readings the decision has incurred.[4] In reaching its decision the federal district court relied on United States ex rel. Russo v. New Jersey, cited in the margin. Beyond doubt this case construed *Escobedo* with great liberality. Apart from its dubious precedential value,[5] we believe that it does not accurately state this Circuit's interpretation of the *Escobedo* requirements. See, Cox v. United States, 373 F.2d 500 (8th Cir. 1967); Golliher v. United States, 362 F. 594 (8th Cir. 1966); Hayes v. United States, 347 F.2d 668 (8th Cir. 1965). In all of these cases we were careful to recognize the particular facts in *Escobedo* and the limiting language of the court's holding[6] which was reaffirmed in Johnson v. New Jersey, *supra* 384 U.S. at 733, 86 S.Ct. 1772.

The *Cox* case appears to be dispositive of the instant matter. There, the accused was arrested in Florida and later returned to Missouri to stand trial. During his incarceration in Florida he made requests for an attorney, but was not afforded one. Upon his return to Missouri he was interrogated and incriminating statements were elicited. The accused was warned of his rights in Florida and was told prior to the Missouri interrogation that he need not make a statement. No request for counsel was made to the interrogating officer in Missouri. These facts, coupled with the absence of any showing that the statements were involuntary, compelled us to hold that the teachings of *Escobedo* had not been violated.

More importantly, however, we believe our conclusion that the incriminating statements were *not* obtained in violation of appellee's Sixth Amendment right to counsel, is entirely consistent with a recent Supreme Court decision interpreting the *Escobedo* requirements. In Frazier v. Cupp, 394 U.S. 731, 89 S. Ct. 1420, 22 L.Ed.2d 684 (1969), the Court was faced with a post-*Escobedo*, pre-*Miranda* confession allegedly obtained in violation of the accused's constitutional rights.[7] Frazier was arrested and interrogated as a suspect in connection with a murder. After preliminary questioning, he was told that he could have an attorney and that any

---

4. The following cases represent a cross section of decisions illustrating that diversity. Cox v. United States, 373 F.2d 500 (8th Cir. 1967); White v. Hancock, 355 F.2d 262 (1st Cir. 1966); United States v. Cone, 354 F.2d 119 (2d Cir. 1965), *cert. denied,* 384 U.S. 1023, 86 S.Ct. 1958, 16 L.Ed.2d 1026 (1966); United States ex rel. Russo v. New Jersey, 351 F.2d 429 (3d Cir. 1965); Miller v. Warden, Maryland Penitentiary, 338 F.2d 201 (4th Cir. 1964).

The confusion and disagreement surrounding *Escobedo* was recognized by and influenced the Court to promulgate the specific requirements embodied in *Miranda.* 384 U.S. at 441–442, 86 S.Ct. 1602. See Johnson v. New Jersey, 384 U.S. 719, 734, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

5. The judgment was vacated and the case remanded for reconsideration in light of Johnson v. New Jersey, *supra.* New Jersey v. Russo, 384 U.S. 889, 86 S.Ct. 1914, 16 L.Ed.2d 995 (1966).

6. "We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, the suspect has been taken into police custody, the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied 'the Assistance of Counsel' in violation of the Sixth Amendment to the Constitution as 'made obligatory upon the States by the Fourteenth Amendment,' Gideon v. Wainwright, 372 U.S. 335 at 342, 83 S.Ct. 792, [9 L.Ed.2d 799] at 795, and that no statement elicited by the police during the interrogation may be used against him at a criminal trial." 378 U.S. at 490–491, 84 S.Ct. at 1765.

7. It should be noted that *Frazier* was decided after the district court filed its memorandum opinion.

statements he made could be used against him. Thereafter, he was falsely advised that his companion on the night of the crime had confessed. Upon further questioning and prodding from the police, Frazier began to spill his story. However, he had not gone far before he apparently had second thoughts and said, "I think I had better get a lawyer before I talk anymore." The interrogating officer replied, "You can't be in any more trouble than you are in now," and Frazier continued with his confession.

On these facts, the Court held that Frazier's confession was voluntarily given and did not violate the dictates of *Escobedo*. As to the requirements of *Escobedo*, the Court observed:

"We do not believe that *Escobedo* covers this case. Petitioner's statement about seeing an attorney was neither as clear nor as unambiguous as the request Escobedo made. The police in *Escobedo* were unmistakably informed of their suspect's wishes; in fact Escobedo's attorney was present and repeatedly requested permission to see his client. Here, on the other hand, it is possible that the questioning officer took petitioner's remark not as a request that the interrogation cease but merely as a passing comment. Petitioner did not pursue the matter, but continued answering questions. In this context, we cannot find the denial of the right to counsel which was found so crucial in *Escobedo*." 394 U.S. at 739, 89 S.Ct. at 1424.

Comparison of the circumstances surrounding appellee's incriminating statements with the circumstances extant in *Frazier* and *Escobedo* compel us to conclude that this case is controlled by *Frazier*. Clearly the exaggerated practices employed by Escobedo's interrogators are not here present. Appellee, like Frazier but unlike Escobedo, was given a partial warning of his constitutional rights. He was advised of his right to remain silent and his right to an attorney by Minneapolis authorities.[8] Although the warning was not repeated before the interrogation in which he made the incriminating statements, the second interrogation occurred only several days after the more complete warning. Moreover, testimony by Lieutenant Knott that appellee stated he was aware of his rights indicates that the first warning was still effective when appellee was interrogated by Knott.[9] As we have previously demonstrated there is no question as to the voluntariness of the statements.

As in *Frazier* appellee at one point in his custody articulated a desire to confer with counsel. Unlike Escobedo, there is no evidence to suggest that appellee was prevented from conferring with an attorney. Nor does the evidence indicate that appellee made repeated requests for an attorney during the disputed interrogation. Rather, it appears that, as in *Frazier*, after making his statement about an attorney, appellee did not further pursue the matter.[10] Furthermore, it is undisputed that appellee in no way

8. Indeed, the warning given appellee by Captain Egeland is arguably more protective than that given in *Frazier*. Appellee was told that he had the right to remain silent, whereas Frazier was merely told that the statements could be used against him. If *Escobedo* was principally concerned with protecting the accused's right to exercise his privilege against self-incrimination by insuring that he fully understands that right, Captain Egeland's warning appears to convey that concern more readily.

9. Furthermore, Knott testified that prior to appellee's interruption, he (Knott) had advised appellee that he was not required to make a statement.

10. The evidence surrounding appellee's request for counsel is not well developed. All of the evidence before us arises from the three answers Captain Egeland made during cross-examination. We reiterate that appellee has never testified in any of the proceedings that he requested counsel during the interrogation here in question.

communicated to Lieutenant Knott, the officer who conducted the interrogation which produced the incriminating statements now in dispute, his desire to confer with an attorney.

In summary, we conclude as did the Supreme Court in *Frazier* that, "In this context, we cannot find the denial of the right to counsel which was found so crucial in *Escobedo*." 394 U.S. at 739, 89 S.Ct. at 1425. Accordingly, we reverse and remand with directions to deny the writ and dismiss the petition.