**UNITED STATES of America**

v.

**Donald Wallace PERKINS, Appellant.**

**UNITED STATES of America**

v.

**Gerald Leonard WHITMORE, Appellant.**

**Nos. 23721, 23722.**

United States Court of Appeals, District of Columbia Circuit.

Argued March 9, 1970.

Decided Oct. 13, 1970.

---

Mr. Jay S. Weiss, Washington, D. C., for appellant in No. 23,721.

Mr. Denis K. Lane, Washington, D. C., for appellant in No. 23,722.

Mr. William S. Block, Asst. U. S. Atty., with whom Messrs. Thomas A. Flan-nery, U. S. Atty., John A. Terry and Daniel E. Toomey, Asst. U. S. Attys., were on the brief, for appellee.

Before McGOWAN, TAMM and ROBINSON, Circuit Judges.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

These appeals present two rather novel questions. The first concerns this court's jurisdiction to review the refusal of the District Court to order competency examinations of federal arrestees whose removal to another district is sought. The second is an inquiry as to whether the arrestees have the right under the mental competency statute [1] and Rule 40 of the Federal Rules of Criminal Procedure to a mental examination and an affirmative determination of mental competence prior to a removal hearing. Because, in the particular circumstances, we find appellants' claims in these respects to pose insubstantial interlocutory issues, we dismiss these appeals for lack of jurisdiction.

Appellants were arrested in the District of Columbia compliably with federal warrants issued in Philadelphia on a complaint charging bank robbery there.[2] A removal hearing, pursuant to Rule 40 (b),[3] was scheduled but was twice continued, once because appellants wished to consider pleas of guilty in this jurisdiction.[4] In the meanwhile, five persons, two of whom allegedly are our appellants, were indicted in the United States District Court for the Eastern District of Pennsylvania for offenses emanating from the robbery earlier identified in the arrest warrants.[5] Prior to expiration of the last continuance of the removal hearing, appellants moved in the United States District Court for the District of Columbia for mental examinations, and a concomitant stay of the removal proceedings, on allegations of

---

1. 18 U.S.C. § 4244 (1964).

2. 18 U.S.C. § 2113 (1964).

3. See Part II, *infra.*

4. See Fed.R.Crim.P. 20.

5. Sweeping more broadly than the forerunning complaint, the indictment charges offenses under 18 U.S.C. §§ 371, 2113 (1964).

past mental instability suggesting the conclusion that neither was able to assist his counsel effectively. The District Judge denied the motions, and these appeals followed.

## I

■ With exceptions not here relevant, this court, has jurisdiction only of final decisions of the District Court.[6] On this basis, the Government argues that we have no authority over the instant appeals since there has been no judgment or sentence in these cases.[7] Several other arguments against jurisdiction can be mustered as well. Firstly, it can be pointed out that one of the purposes behind Rule 40 was to prevent removal proceedings from being "used by defendants for dilatory purposes and in attempting to frustrate prosecution by preventing or postponing" out-of-district transfers for trial.[8] A holding that appeal lies from an order in a removal proceeding might promote tactics tending to defeat this purpose of the Rule. Secondly, it can be urged that since any claim in defense of the prosecution can be raised in the transferee district, the arrestee suffers no irreparable loss of rights in consequence of a refusal to allow immediate appeal from orders preliminary to removal.[9] Thirdly, it can be contended that allowing a direct appeal of orders in a removal proceeding would impinge upon the policy reflected in the statutory rule that no appeal can be taken from a habeas corpus proceeding which tests "the validity of a warrant to remove" or "the validity of [the] detention pending removal proceedings."[10]

■ For these reasons, the general rule has been that even the terminal removal order is interlocutory and that no appeal from it lies.[11] But it does not inexorably follow from the cases so holding that the appeals at bar must be dismissed. We deal here not simply with a claim that can be raised in the transferee district, nor with one that requires an examination of evidence of probable cause presented at the removal hearing;[12] review of such claims might indeed unnecessarily undercut the policy against delay in removal proceedings. We are faced, instead, with a contention that the arrestee's ability to aid counsel *at the removal hearing* should be suitably investigated and ascertained prior to the hearing and determination on removal.

■ In these circumstances, pertinent doctrine "teaches that an order, though entered prior to full adjudication of all of the issues as to all of the parties, may be appealable if it disposes of claimed rights separable though auxiliary to those pressed as the cause of action."[13]

6. 28 U.S.C. § 1291 (1964).

7. See Berman v. United States, 302 U.S. 211, 212, 58 S.Ct. 164, 82 L.Ed. 204 (1937).

8. Advisory Committee Note 2 to Rule 40. See note 33, *infra.*

9. See generally 3 C. Wright, Federal Practice and Procedure, Criminal §§ 653 *et seq.* (1969). Of course the arrestee could suffer considerable hardship if he were moved across country unnecessarily, *e. g.,* In re Buell, 4 Fed.Cas. pp. 587, 588 (No. 2,102) (C.C.D.Mo.1875), and this is one of the rationalia behind Rule 40, *see* Part II, *infra.* However, it has consistently been said that there is no constitutional right to a hearing prior to removal; the reason given is that the Federal Government's criminal jurisdiction runs through-

out the whole country. *E. g.,* United States ex rel. Hughes v. Gault, 271 U.S. 142, 46 S.Ct. 459, 70 L.Ed. 875 (1926); United States v. Winston, 267 F.Supp. 555, 560 (S.D.N.Y.1967).

10. 28 U.S.C. § 2253 (1964). See also 3 C. Wright, Federal Practice and Procedure, Criminal § 653 at 11–12 (1969).

11. Galloway v. United States, 302 F.2d 457, 458 (10th Cir. 1962), and cases cited therein. Neither the Supreme Court nor this court has ever passed on this precise question, and we intimate no view on it now.

12. See Part II, *infra.*

13. Redding & Co. v. Russwine Const. Corp., 135 U.S.App.D.C. 153, 156, 417 F.2d 721, 724 (1969) (footnote omitted).

The leading case is Cohen v. Beneficial Industrial Loan Corporation,[14] in which the Supreme Court sustained the appealability of an order denying a motion to require the posting of security for the expenses of suit. The Court held that the order could be reviewed because it fell "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." [15]

In deciding whether an order falls within the collateral order exception to the final judgment rule, we have been instructed to take a practical, instead of a technical, approach.[16] The general policy against piecemeal litigation, of course, has particular strength where criminal proceedings are involved; as the Supreme Court admonished in Di-Bella v. United States,[17] "the delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law." [18] In that case, the Court held that no appeal would lie from the grant or denial of a pretrial motion to suppress, in the absence of specific legislation to the contrary.[19]

DiBella does not mean, however, that the collateral order doctrine can have no applicability to matters relating to criminal trials. The decision there depended on two main factors: one, that allowing the appeal would entail "serious disruption to the conduct of a criminal trial"; the other, that "the legality of the search too often cannot truly be determined until the evidence at the trial has brought all circumstances to light." [20] Except insofar as allowing the instant appeals would delay the removal that must precede the trial, these reasons are not applicable here.

Thus we must face the question whether in light of DiBella the order appealed from falls within the collateral order doctrine. In United States v. Cefaratti,[21] we stated that if three tests are met, an order is appealable under Cohen:

An order that does not "terminate an action" but is, on the contrary, made in the course of an action, has the finality that § 1291 requires for appeal if (1) it has "a final and irreparable effect on the rights of the parties", being "a final disposition of a claimed right"; (2) it is "too important to be denied review"; and (3) the claimed right "is not an ingredient of the cause of action and does not require consideration with it." [22]

Although the Cefaratti result was discarded by DiBella, we believe that the Cefaratti approach has survived. Indeed, the Court in DiBella used essentially a similar mode of analysis in deciding, for reasons mentioned above, that a suppression order was not appealable.[23]

We turn, then, to apply the Cefaratti tests to the cases at hand. With respect

14. 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).

15. Id. at 546, 69 S.Ct. at 1225.

16. Id. at 547, 69 S.Ct. 1221; Redding & Co. v. Russwine Const. Corp., supra note 13, 135 U.S.App.D.C. at 156, 417 F.2d at 724; DiBella v. United States, 369 U.S. 121, 124–126, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962).

17. Supra note 16.

18. 369 U.S. at 126, 82 S.Ct. at 658.

19. Id. at 131, 82 S.Ct. 654. See 18 U.S.C. § 1404 (1964) (allowing a Government appeal from a suppression order in narcotics cases); 18 U.S.C. § 3731 (Supp. IV 1965–68) (authorizing such an appeal in any criminal case).

20. 369 U.S. at 129, 82 S.Ct. at 659.

21. 91 U.S.App.D.C. 297, 202 F.2d 13 (1952), cert. denied, 345 U.S. 907, 73 S.Ct. 646, 97 L.Ed. 1343 (1953).

22. Id. at 301, 202 F.2d at 16.

23. The Court did recognize that if an order were truly independent of the criminal proceeding out of which it grew, an appeal would lie. Thus it held that "if the motion is solely for return of property and is in no way tied to a criminal prosecution in esse against the movant the proceedings can be regarded as independent." Id. 369 U.S. at 131–132, 82 S.Ct. at 661.

to the third test, it is plain that appellants' ability to help counsel at the removal hearing is a consideration directly related to that hearing rather than to the criminal action pending against them in Philadelphia. Furthermore, it seems clear that the first *Cefaratti* test is also met. Once an arrestee is taken to the transferee district, it appears, the procedural legality of the transfer cannot be raised;[24] and even if it is raised, it is unlikely that the arrestee could show prejudice from the denial of a mental competency ruling at the removal hearing.[25] At the transferee district, of course, the arrestee can move for a determination of his competence to stand trial, but that determination will not satisfy appellants' claim of a right to ascertainment of their competence to assist counsel at the hearing Rule 40 affords on the question whether in the first place a removal should be directed. If this claim is a valid one, it may well be lost if not passed upon now.

The third precondition to appealability is that the order be "too important to be denied review," and the courts have taken a very pragmatic approach to this aspect of the *Cohen* doctrine.[26] While appellants assert, that they will be denied due process if a competency determination is not made, the Government believes the contention is frivolous; and the importance of the controversy cannot be decided in a vacuum. Particularly since there are no decisions in point on the legal issue before us, there seems no way satisfactorily to decide whether this court has jurisdiction under the collateral order doctrine—that is whether the order under attack is "too important" for review to be denied—except to make a preliminary examination of the merits of appellants' claim [27] for that purpose.

## II

Rule 40 specifies the procedures governing transfer of an arrestee from the district of his arrest to another district wherein the trial is properly to be held. The procedures differ, however, in material respects, according to whether the arrest takes place in a "nearby" or a "distant" district—as measured by reference to the place where the prosecution is pending or, in instances of arrests without a warrant, the place where the alleged offense was committed. "Nearby" district arrests are those which occur in another district of the same state or, if in a district in another state, within a distance of 100 miles.[28] A "distant" district arrest, conversely, is one that occurs out-of-state at a point more than 100 miles away.[29]

There are no removal proceedings for arrestees in "nearby" districts; the transfer, if any is ordered, follows a normal preliminary hearing and a decision thereon to hold the arrestee to answer.[30] On the other hand, removal proceedings, unless waived, and a warrant of removal precondition any transfer of an arrestee

24. 5 L. Orfield, Criminal Procedure Under the Federal Rules § 40:6 at 637 (1967). See Evans v. United States, 325 F.2d 596 (8th Cir.), cert. denied, 377 U.S. 968, 84 S.Ct. 1649, 12 L.Ed.2d 738 (1963). Cf. Ker v. Illinois, 119 U.S. 436, 7 S.Ct. 225, 30 L.Ed. 421 (1922); Arco v. Ciccone, 359 F.2d 796, 798 (8th Cir. 1966).

25. See Reichert v. United States, 123 U.S. App.D.C. 294, 359 F.2d 278 (1966).

26. See, e. g., United States v. Wood, 295 F.2d 772, 777–778 (5th Cir. 1961) (review of denial of temporary restraining order allowed; Government sued to enjoin state prosecution of Negro on theory that it would intimidate other Negro voters);

Covey Oil Co. v. Continental Oil Co., 340 F.2d 993, 996 (10th Cir.), cert. denied, 380 U.S. 964, 85 S.Ct. 1110, 14 L.Ed.2d 155 (1965) (review of denial of motion to quash subpoena allowed; irreparable harm to non-parties could result from revelation of trade secrets).

27. Compare Nestor v. Hershey, 138 U.S. App.D.C. 73, 425 F.2d 504 (1969).

28. Fed.R.Crim.P. 40(a). See also Advisory Committee Note 3 thereto.

29. Fed.R.Crim.P. 40(b) (1). See also Advisory Committee Note 3 thereto.

30. Fed.R.Crim.P. 40(a). See also Advisory Committee Note 3 thereto.

from a "distant" district for trial.[31] Our concern is with a transfer of the latter type,[32] and more especially with the elements of the removal hearing to which appellants, in consequence, became entitled.

For both "nearby" and "distant" district arrests, Rule 40 contemplates service toward two primary goals. One is avoidance of delay in bringing arrestees to trial,[33] and to this end the design of the proceedings itself promote expedition. The other objective, sought with equal vigor, is to guard against improvident removals.[34] This Rule 40 partly achieves through a requirement of proof of "probable cause to believe that [the arrestee] is guilty of the offense charged" prior to any removal following an arrest without a warrant[35] or an arrest pursuant to a warrant issued on an information or complaint.[36] Where, however, an indictment against the arrestee has been returned, a warrant of removal may issue simply "upon production of a certified copy of the indictment and upon proof that [the arrestee] is the person named in the indictment."[37] The theory underlying this provision is that probable cause is established, beyond the preview of judicial review, by the grand jury's return of the indictment.[38]

Although, as we have stated, our appellants were apprehended on warrants issued on a complaint in Philadelphia, an indictment was later returned there.[39] A certified copy of the indictment, charging two (among five) persons with names identical with those of appellants, appears in the record on these appeals. Production of the indictment at appellant's removal hearing, as we have pointed out, will have the effect of limiting the inquiry solely to whether appellants are in fact parties named therein.[40] By the same token, the only question remaining for us, in terms of our jurisdiction of these appeals, is whether appellants' ability to assist counsel bears so vitally upon so narrow and simple an inquiry as to give sufficient stature to these appeals.

We think that it does not and that appellants' contention that the District

31. Fed.R.Crim.P. 40(b) (3) (4). See also Advisory Committee Note 3 thereto.

32. We notice judicially the fact that Philadelphia is situated in the State of Pennsylvania more than 100 miles from the District of Columbia.

33. "The purpose of removal proceedings is to accord safeguards to a defendant against an improvident removal to a distant point for trial. On the other hand, experience has shown that removal proceedings have at times been used by defendants for dilatory purposes and in attempting to frustrate prosecution by preventing or postponing transportation even as between adjoining districts and between places a few miles apart. The object of the rule is adequately to meet each of these two situations." Advisory Committee Note 2 to Fed.R.Crim.P. 40.

34. See note 33, *supra*.

35. Fed.R.Crim.P. 40(b) (4).

36. "If the prosecution is by indictment, a warrant of removal shall issue upon production of a certified copy of the indictment. If the prosecution is by information or complaint, a warrant of removal shall issue upon the production of a certified copy of the information or complaint and upon proof that there is probable cause to believe that the defendant is guilty of the offense charged." Fed.R. Crim.P. 40(b) (3).

37. See note 36, *supra*.

38. "[I]n case of an indictment, the grand jury, which is an arm of the court, has already found probable cause. Since the action of the grand jury is not subject to review by a district judge in the district in which the grand jury sits, it seems illogical to permit such review collaterally in a removal proceeding by a judge in another district." Advisory Committee Note 3 to Fed.R.Crim.P. 40. And see Hemans v. Matthews, 6 F.R.D. 3, 4 (D.D.C.), aff'd, 81 U.S.App.D.C. 417, 158 F.2d 9 (1946); Dailey v. United States, 286 F.2d 62 (8th Cir.), cert. denied, 365 U.S. 827, 81 S.Ct. 714, 5 L.Ed.2d 906 (1961).

39. See text *supra* at notes 2–5.

40. See text *supra* at notes 35–37. See also Cox v. United States, 373 F.2d 500 (8th Cir. 1967). But *cf.* United States v. Parker, 14 F.R.D. 146, supplemental opinion, 14 F.R.D. 447 (D.D.C.1953); United States v. Winston, 267 F.Supp. 555, 560 (1967).

Court erroneously denied an investigation into and a ruling on their competence fails to generate an issue "too important to be denied review." [41] We reiterate that the focal point at the removal hearing will be, not whether there is probable cause for believing that appellants participated in the Philadelphia robbery, but solely whether they are among those whom the grand jury charged with doing so. We repeat, too, that two of the names specified in the indictment match those of appellants completely. In this age of scientific detection, and considering the vast resources therefor at the Government's disposal, we could hardly assume that the Government is unequal to the task of producing ample proof of appellants' identity as parties actually referred to by the grand jury, if indeed they are, and this without any help whatsoever from appellants. [42] At the same time, we are unable to conceive of any appreciable help defense counsel would need from their clients, or that the clients could supply counsel, to combat any identity proof worthy of the name. [43] In sum, we deem an assurance of appellants' competence to be of such dubious value to identification of those whom the grand jury had in mind as to fall far short in the degree of importance which

may serve to bring the District Court's ruling within reach of the collateral order doctrine. [44]

We may, in this connection, also look to our decision in Lathan v. Reid [45] which, though cited by appellants, lends support to the view we express here. There, upon a demand for interstate rendition, the arrestee, found competent before the rendition order was signed, sought habeas corpus, and his competence during that proceeding was questioned by his counsel. On appeal from the denial of the habeas corpus petition, we left open the question whether the arrestee's incompetence at the hearing on rendition could invalidate the rendition order, [46] but we noted that even if he was incompetent at the time of the habeas corpus hearing, "we do not perceive any possible way in which appellant, if competent, could have aided counsel in making a tenable showing that appellant was entitled to habeas corpus and his freedom." [47] Similarly, in the instant cases, we see no more important role for appellants' mental capacity in the limited inquiry their contemplated removal necessitates. On the contrary, since what these cases involve is federal inter-district transfer, the impetus to delve into the matter before transfer is

---

41. See text *supra* at note 22.

42. See United States v. Provoo, 16 F.R.D. 341, 343 (S.D.N.Y.1954); United States v. Melekh, 190 F.Supp. 67 (S.D.N.Y. 1960). See also 3 C. Wright, Federal Practice and Procedure, Criminal § 651 (1969).

43. We recognize, of course, that any records relevant to appellants' mental condition are likely to be in the District of Columbia, wherein they reside, but that circumstance, cannot argue effectively for a jurisdiction we otherwise lack. It might, however, in connection with an inquiry into competence to stand trial, be directed to the District Court in the transferee district, which possesses power, upon appellants' motion, to transfer the case "[f]or the convenience of parties and witnesses, and in the interest of justice, * * *." Fed.R.Crim.P. 21. See also Jones v. Gasch, 131 U.S.App.D.C. 254, 404 F.2d 1231 (1967), cert. denied, 390

U.S. 1029, 88 S.Ct. 1414, 20 L.Ed.2d 286 (1968).

44. We express no opinion, of course, on the validity of a claim for a competency determination prior to a removal hearing based upon a prosecution by information or complaint, at which probable cause must be shown. *Cf.* United States v. Adams, 296 F.Supp. 1150, 1151 (S.D. N.Y.1969):

[The preliminary hearing] would be meaningless if the [defendant] is unable to understand the charges against him or be helpful to counsel in his defense. It is for this very reason that the issue of competency be determined as soon as it is noted.

45. 108 U.S.App.D.C. 58, 280 F.2d 66, cert. denied, 364 U.S. 865, 81 S.Ct. 107, 5 L.Ed. 2d 86 (1960).

46. *Id.* at 61, 280 F.2d at 69; and see the cases there cited.

47. *Id.*

even smaller here than it was in *Lathan.* For "[r]emoval from one federal district to another * * * is unlike extradition or interstate rendition, in that the protection owed by a sovereign to those within its territory is not involved;" [48] and "the "full protecting power of the United States is continued after the removal from the place of arrest to the place of trial." [49]

Nor do we think that the statute [50] providing for examinations into and determinations on mental competency after arrest and before trial demands the result which appellants seek. The statute itself provides that the motion for mental examination is to be made to "the trial court in which proceedings are pending",[51] and the purpose of the examination, as we have had past occasion to observe, is "to get evidence on whether the accused is or is not competent to stand *trial.*" [52] Arguably, these considerations do not positively foreclose the construction for which appellants contend, especially since the statute also provides that a mental competency examination is proper if the defendant may be "presently insane or otherwise so mentally incompetent as to be unable to understand the proceedings against him or properly to assist in his own defense." [53] But since the limited inquiry to be made at appellants' removal hearing stripped it

of the characteristics of a trial, or even a preliminary hearing, we are unwilling to stretch the congressional language to cover it.[54]

■ We conclude, then, that the appeals before us are not saved by resort to the collateral order doctrine. We accordingly dismiss them for lack of jurisdiction.

So ordered.

48. United States ex rel. Kassin v. Mulligan, 295 U.S. 396, 399–400, 55 S.Ct. 781, 782–783, 79 L.Ed. 1501 (1935). See also Charlton v. Kelly, 229 U.S. 447, 462, 33 S.Ct. 945, 950, 57 L.Ed. 1274 (1913), where the Court, reviewing quite narrowly on habeas corpus the decision of a magistrate in an extradition proceeding, said:

> If the evidence not admitted by the magistrate was only for the purpose of showing present insanity by reason of which the accused was not capable of defending the charge of crime, it is an objection which should be taken before or at the time of his trial for the crime. If it was offered to show insanity at the time of the commission of the crime, it was obviously a defense which should be heard at the time of his trial, or by a preliminary hearing in the jurisdiction

of the crime, if so provided for by its laws.

49. Beavers v. Henkel, 194 U.S. 73, 83, 24 S.Ct. 605, 606, 48 L.Ed. 882 (1904).

50. 18 U.S.C. § 4244 (1964).

51. *Id.*

52. Mitchell v. United States, 114 U.S.App. D.C. 353, 359, 316 F.2d 354, 360 (1963) (emphasis added).

53. 18 U.S.C. § 4244 (1964).

54. Nor do we consider apposite Wear v. United States, 94 U.S.App.D.C. 325, 328, 218 F.2d 24, 27 (1954), which interprets § 4244 to require the trial judge to grant a motion for a competency hearing if it is made in good faith and the grounds are not frivolous. That case involved a motion made in the district in which the trial was properly to take place.