Joseph A. **YABLONSKI** et al., Appellants,

v.

**UNITED MINE WORKERS OF AMERICA.**

No. 24945.

United States Court of Appeals, District of Columbia Circuit.

Argued June 9, 1971.

Decided July 21, 1971.

Mr. Joseph L. Rauh, Jr., Washington, D. C., with whom Messrs. John Silard, Elliott C. Lichtman and Clarice R. Feldman, Washington, D. C., were on the brief, for appellants.

Mr. Paul R. Connolly, Washington, D. C., with whom Mr. Edward L. Carey, Washington, D. C., was on the brief, for appellee.

Before McGOWAN, ROBINSON and WILKEY, Circuit Judges.

PER CURIAM:

This is an action under § 501 of the Labor-Management Reporting and Disclosure Act[1] brought by the late Joseph

---

1. 29 U.S.C. § 501(b) (1964) provides *inter alia:*

When any officer, agent, shop steward, or representative of any labor organization is alleged to have violated the duties declared in subsection (a) of this section and the labor organization or its governing board or officers refuse or fail to sue or recover damages or secure an accounting or other appropriate relief within a reasonable time after being requested to do so by any member of the labor organization, such member may sue such officer, agent, shop steward, or representative in any district court of the United States or in any

A. Yablonski and 48 other members of the United Mine Workers of America against the UMWA and three named officers—Boyle, President; Titler, Vice President; Owens, Secretary-Treasurer —asking for an accounting of UMWA funds disbursed by them and for restitution of funds allegedly misappropriated and misspent.

No trial on the merits has been had. The issue on this appeal is whether the law firm regularly representing the UMWA, who originally entered an appearance for the UMWA and the three individual officer-defendants, should be allowed to continue its representation of the UMWA after it withdrew as counsel for the individual defendants. The District Court found that the regular UMWA outside counsel was not disqualified from continuing its representation in this action, but for reasons enunciated *infra* we hold that in the particular circumstances of this case such representation should be discontinued.

After the action was filed in December 1969, appellant-plaintiffs filed in May 1970 a motion to disqualify counsel on the grounds (1) that the compensation of the regular UMWA counsel would continue to come from the UMWA treasury and (2) that there existed a conflict between the UMWA and the individual defendant officers. A month later the UMWA counsel withdrew as counsel for the individual defendants but remained as counsel for the UMWA, which the District Court sustained as proper.

At the outset of the lawsuit the then counsel for all defendants set about with commendable diligence to delineate the real issues of the lawsuit, filing in behalf of the UMWA and the three individual defendants answers setting forth all customary general defenses, and filing 34 pages of interrogatories to develop more fully the scope of the case.

The appellants argue that this period of six months' prior representation in this same suit disqualifies the regular union outside counsel to continue its representation of the UMWA, even after its withdrawal as counsel for the three individual officer-defendants. With this we do not agree. It has been inferentially held that one lawyer can properly represent all defendants if a suit appears groundless, and that separate counsel is required only in a situation where there is a potential conflict between the interests of the union and those of its officers.[2] We regard the actions of the regular UMWA counsel during its six-month representation of both the union and its officers as an effort to ascertain the exact nature of the lawsuit and protect the interests of all defendants, and by our ruling herein do not imply any censure of counsel's action during this period of joint representation. But there does exist in our judgment a more serious barrier to the continued representation of the UMWA by its regular outside counsel in this particular lawsuit.

I. *Effect of Other Litigation in Which Regular UMWA-Counsel Represent Defendant President Boyle*

Of far more concern is the existence of other litigation in which the regular UMWA counsel is representing Boyle, sometimes in conjunction with representation of the union, at other times not.

(1) The "reinstatement" or "reprisal" case—one of four "election" cases brought by Joseph A. Yablonski against the UMWA and its officers, alleging that the reassignment or severance of plaintiff Yablonski from certain union duties was a reprisal for his running for president against the incumbent Boyle. After the death of Yablonski the trial court dismissed the case as moot, and this action is on appeal in this court.[3] Appel-

---

State court of competent jurisdiction to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization.

2. Milone v. English, 113 U.S.App.D.C. 207, 306 F.2d 814 (1962).

3. Yablonski v. UMWA, No. 24,584.

lants here claim that if this court should hold that the trial court was wrong in dismissing the reprisal case as moot, then appellee Boyle may subsequently be required to pay substantial punitive damages to the estate of Yablonski, and thus Boyle has a personal, as distinguished from a union, interest in that appeal. Although initially the union and its officers were represented by the union general counsel in the District Court, the regular UMWA outside counsel represented both the UMWA and Boyle personally on the motion to dismiss as moot, and continues such representation on appeal in this court.

(2) Denial of attorney's fees—as an outgrowth of the UMWA election cases, attorneys for "the Yablonski group" applied for attorney's fees to be paid by the union, which the District Court denied, finding that "no malfeasance on the part of the officers has yet been established." These four cases[4] are now on appeal. The regular UMWA counsel represents both the union and the individual officer-defendants here and did so on the merits in two of the cases in the District Court (the "Journal" and "fair election" cases, paragraph 3 infra) and on the motions to dismiss in all four cases, where the issue originally was the compliance of the incumbent officers with the Labor-Management Reporting and Disclosure Act. This series of cases is alleged to be related to the case at bar, inasmuch as paragraph 13 of the complaint herein alleges that Boyle and the other individual officer-defendants employed counsel to defend them on charges of breach of trust and paid such counsel from UMWA funds, the regular outside UMWA counsel here involved being one of those whose representation and compensation is being challenged in this present suit.

(3) The "Journal" and "fair election" cases—during the UMWA election campaign candidate Yablonski claimed that the union newspaper was being used to promote the candidacy of incumbent President Boyle. On appeals in this court[5] the regular UMWA counsel represented Boyle and the union, although in one aspect in the District Court which was severed and consolidated with the instant case, whether Boyle should be made to pay for some of the costs of printing of the Journal, the regular UMWA counsel does not represent Boyle.

(4) Blankenship v. Boyle—a group of retired miners sued the Trustees of the UMWA Welfare and Retirement Fund of 1950, one of the Three Trustees being Boyle, alleging that the Fund had been mismanaged by the Trustees. Boyle was charged with using his position as a Trustee to increase pension benefits to assist his re-election campaign. The District Court ordered his removal as Trustee and this court has recently refused to stay the effectiveness of that order,[6] although not deciding the appeal on the merits. Regular UMWA counsel represents Boyle individually in all three of the capacities in which he is sued, as Trustee of the Fund, President of the UMWA, and Director of the National Bank of Washington, as well as representing the union.

We have listed and briefly described the above actions of record in which the regular UMWA counsel represents Boyle individually. Each of these has been minutely examined by appellees' counsel to demonstrate that in no instance is the

4. Consolidated cases, all titled Yablonski v. UMWA, Nos. 24,560, 24,561, 24,562, and 24,563 in this court.

5. Appeals in this court in the "Journal" cases, all captioned Yablonski v. UMWA, have now been terminated. In No. 23,-439, appellant's motion for summary reversal was denied on 29 August 1969 and the appeal dismissed on 28 April 1970. Nos. 23,536 and 23,659, consolidated on appeal, were affirmed by order of the court on 28 November 1969. The "fair election" case, in which regular UMWA counsel represented the union and its officers in the District Court, was dismissed after UMWA counsel represented that substantial changes in election procedures would be instituted. No appeal has been taken from that dismissal.

6. Blankenship v. Boyle, 145 U.S.App.D.C. ——, 447 F.2d 1280, Order denying stay filed 11 June 1971.

representation of Boyle individually in conflict with the good faith representation of the UMWA in this case; in effect, that the interests of the UMWA and of Boyle individually are the same. We are assured that if any conflict should arise appellees' counsel would be prompt to withdraw as counsel to the UMWA in this case.

While the issues involved in each of the individual cases, and the past or present existence or nonexistence of any conflict, are relevant to the propriety of the regular UMWA counsel continuing its representation of the union in the case at bar, yet we do not think that this analysis is determinative of the real problem here. It is undeniable that the regular UMWA counsel have undertaken the representation of Boyle individually in many facets of his activities as a UMWA official, as a Trustee of the Fund, as a Director of the Bank owned 74% by the union. With strict fidelity to this client, such counsel could not undertake action on behalf of another client which would undermine his position personally. Yet, in this particular litigation, counsel for the UMWA should be diligent in analyzing objectively the true interests of the UMWA as an institution without being hindered by allegiance to any individual concerned.[7]

We are not required to accept at this point the charge of the appellants that the "true interest" of the union is aligned with those of the individual appellants here; this may or may not turn out to be the fact. But in the exploration and the determination of the truth or falsity of the charges brought by these individual appellants against the incumbent officers of the union and the union itself as a defendant, the UMWA needs the most objective counsel obtainable. Even if we assume the accuracy of the appellee's position at the present time that there is no visible conflict of interest, yet we cannot be sure that such will not arise in the future.

Whether facts are discovered and legal positions taken which would create such a conflict of interest between the UMWA position and the position of the individual defendant Boyle may well be determined by the approach which counsel for the UMWA takes in this case. We think that the objectives of the Labor-Management Reporting and Disclosure Act[8]

---

7. "Where, as here, union officials are charged with breach of fiduciary duty, the organization is entitled to an evaluation and representation of its institutional interests by independent counsel, unencumbered by potentially conflicting obligations to any defendant officer." Int'l Bhd. of Teamsters etc. v. Hoffa, 242 F. Supp. 246, 256 (D.D.C.1965). We are aware, of course, that in a second opinion in the Hoffa case, Int'l Bhd. of Teamsters v. Hoffa, No. 1154–64 D.D.C. 8 September 1965, 52 CCH Lab.Cas. 23,516, the court held that by "independent counsel" it meant counsel who did not represent both the union and an officer-defendant in the same case, and that the union was free to choose a regularly retained attorney to represent its interests in a § 501 suit. The Hoffa case, however, did not present a situation like that of the case at bar, where the regular union counsel seeks to represent the union in a "derivative" action while at the same time representing in pending and related matters an individual officer charged in that action.

8. 29 U.S.C. § 401 (1964) sets forth the congressional declaration of findings, purposes and policy of the LMRDA, including *inter alia* the statement that "in order to accomplish the objective of a free flow of commerce it is essential that labor organizations, employers, and their officials adhere to the highest standards of responsibility and ethical conduct in administering the affairs of their organizations * * *." The legislative history of the Act makes plain that a major congressional objective was to provide union members, as well as the Government in the public interest, with a variety of means to ensure that officials of labor organizations perform their duties in accordance with fiduciary standards. Both the Senate and House reports relating to the Act stressed the importance of such standards, the Senate Committee noting that:

Labor organizations are creations of their members; union funds belong to the members and should be expended only in furtherance of their common interest. A union treasury should not

would be much better served by having an unquestionably independent new counsel in this particular case. The public interest requires that the validity of appellants' charges against the UMWA management of breach of its fiduciary responsibilities be determined in a context which is as free as possible from the appearance of any potential for conflict of interest in the representation of the union itself.

## II. *Objective Determination of the UMWA's Institutional Interest*

Counsel for the appellees here have stressed the "institutional interest" of the UMWA in all of the issues raised, and particularly the institutional interest of the union in "repose." Counsel's interpretation of the "institutional interest" of the union appears to have been broad enough to authorize UMWA counsel to undertake practically everything worthwhile in the defense of this lawsuit. After the withdrawal of the regular union counsel from representation of Boyle *individually in this case,* the individual practitioner selected to represent Boyle has apparently contributed little to the defense.

By far the strongest laboring oar has been stroked by the regular UMWA counsel on behalf of the union. On oral argument appellees' counsel stated that it had prepared 94 pages of answers to interrogatories, that the individual practitioner representing Boyle had agreed they should do this, as the UMWA had a definite interest that all questions as to the conduct of union affairs previously were accurately answered and that the accurate answers were to be found in the union records. We can see the UMWA interest in having such interrogatories answered accurately, but we would think that since it is the individual defendants who are charged with the misconduct, their counsel would be the one to initiate and to carry the burden. It appears that, since the division of work between the UMWA counsel and counsel for the individual defendants in July 1970, until 15 March 1971 approximately 250 pages of pleadings, motions, memoranda, exhibits, affidavits and papers relating to discovery were filed by the regular UMWA counsel, while the individual defendants' counsel contributed only about 50 pages of similar documents.

In the crucial area of discovery matters, clearly representing the vast bulk of the effort expended by the parties defendant at this stage of the litigation, UMWA counsel have prepared 174 pages of answers to plaintiffs' initial interrogatories which were directed to all defendants, while counsel for the individual defendants, until 2 April 1971, some 7½ months after the interrogatories were originally served, had contented himself with filing 2 pages of answers

be managed as the private property of union officers, however well intentioned, but as a fund governed by fiduciary standards appropriate to this type of organization. The members who are the real owners of the money and property of the organization are entitled to a full accounting of all transactions involving their property. (S.Rep.No. 187, 86th Cong. 1st Sess. 8 (1959), U.S.Code Cong. & Admin.News, p. 2324; *see also* H.R. No. 741, 86th Cong., 1st Sess. 7, 8 (1959).

The House Committee strongly expressed its concern that:

Some trade unions have acquired bureaucratic tendencies and characteristics. The relationship of the leaders of such unions to their members has in some instances become impersonal and autocratic. In some cases men who have acquired positions of power and responsibility within unions have abused their power and forsaken their responsibilities to the membership and to the public. The power and control of the affairs of a trade union by leaders who abuse their power and forsake their responsibilities inevitably leads to the elimination of efficient, honest and democratic practices within such union, and often results in irresponsible actions which are detrimental to the public interest. (H.R. No. 741, 86th Cong., 1st Sess. 6 (1959). Appellants' complaint in the instant case alleges a state of affairs existing within the leadership of the UMWA of the magnitude of that which the House Report condemned.

for each individual defendant, a total of 6 pages. On 2 April 1971 counsel finally filed additional answers on behalf of defendant Boyle; however, as of the date of argument of this appeal, answers on behalf of the other individual defendants had not been filed.

Furthermore, we take judicial notice[9] of the fact that subsequent to oral argument of this appeal, the trial court on 2 July 1971 entered Pretrial Order No. 3, which proposed to impose sanctions under F.R.Civ.P. 37 against the individual defendants, if prompt response to the plaintiffs' interrogatories were not forthcoming, and which found that the answers heretofore filed on behalf of defendant Boyle were "in large measure vague, incomplete and unresponsive and bear the indication that no bona fide effort has been made to secure the information necessary to answer the interrogatories."

Aside from the comparative burden of work carried, some of the issues raised by the regular UMWA counsel would seem to be of more interest to the position of the officers than to the union, for example, the defense on the statute of limitations. Granted that the UMWA may have some interest in limiting the exploration of its internal documents, still the overriding interest in the cutoff date from which the officers individually might be liable, if of course they are liable at all, would seem to be that of the individual defendant-officers. Yet the trial court has noted in Pretrial Order No. 3 that "Counsel for defendant Boyle orally adopted at the April 8, 1971 hearing the Statute of Limitations defense proposed and briefed by defendant UMWA but filed no papers in support of such objection."

This points up the difficulty of defining an "institutional interest" such as that of the union. In trying to achieve a valid definition of an institution's interest, it would seem that counsel charged with this responsibility should be as independent as possible. It appears that in 18 months of representation (6 months for both the UMWA and Boyle individually, and 12 months for the UMWA alone), the regular UMWA counsel has not brought forth a single issue on which the UMWA and the Boyle individual interest have diverged.

We think the analogy of the position of a corporation and its individual officers when confronted by a stockholder derivative suit is illuminating here.[10] We believe it is well established that when one group of stockholders brings a derivative suit, with the corporation as the nominal defendant and the individual officers accused of malfeasance of one sort or another, the role of both the corporate house counsel and the regular outside counsel for the corporation becomes usually a passive one. Certainly no corporate counsel purports to represent the individual officers involved, neither in the particular derivative suit nor in other litigation by virtue of which counsel necessarily must create ties of loyalty and confidentiality to the individual officers, which might preclude counsel from the most effective representation of the corporation itself. The corporation has certain definite institutional interests to be protected, and the counsel charged with this responsibility should have ties on a personal basis with neither the dissident stockholders nor the incumbent officeholders.

Purportedly a stockholder derivative suit is for the benefit of the corporation, even though the corporation is a nominal defendant, just as the appellants here assert (yet to be proved) that their action is for the benefit of the UMWA and that the individual incumbent officers are liable to the union itself for

9. See T.V.T. Corp. v. Basiliko, 103 U.S. App.D.C. 181, 183, 257 F.2d 185, 187 (1958).

10. See Phillips v. Osborne, 403 F.2d 826, 831 (9th Cir. 1968); Int'l Bhd. of Teamsters, etc. v. Hoffa, 242 F.Supp. 246, 251 (D.D.C.1965). Indeed, as appellees themselves noted in a motion filed in the court below "The action by Mr. Yablonski and others is a derivative action on behalf of the union. * * * "

their alleged misdeeds. And, under established corporate law, if the individual officers are successful in the defense of a suit arising out of the performance of their duties as corporate officers, then they may justifiably seek reimbursement from the corporation for the costs of their successful defense.

■ In the ordinary case the action taken here by the regular UMWA counsel in the District Court might well have been the proper one, i. e., after establishing the nature of the lawsuit by interrogatories and filing answers on behalf of both the union and the individual officers in order fully to protect the position of all parties, then to step aside as counsel for the individual defendants and continue the representation of the union. But this particular case is a derivative action for the benefit of the union, and furthermore must be viewed in its relationship to this entire complex of numerous cases already pending or decided in this and the District Courts in which the regular UMWA counsel has already undertaken the representation of Boyle individually. Each and every one of these cases either directly arises out of or is directly connected with the struggle for power in the UMWA being waged by the Yablonski group on one side and the incumbent officers headed by President Boyle on the other. In this situation, the best interests of the UMWA and the purposes of the Labor-Management Reporting and Disclosure Act will be much better served by the disqualification of the regular union counsel in this particular suit and its continued representation of the individual Boyle in the other lawsuits.

We are cognizant that any counsel to represent the UMWA selected by President Boyle will be to some degree under his control. But such counsel will still only have one client—the UMWA—to represent in matters growing out of the union's affairs. Such counsel would never be professionally obligated to consider Boyle's personal interests, because they would not be representing him individually in related matters. And the extent of their labors would be gauged by the need to protect the UMWA position in this litigation.

Therefore, the Order of the District Court denying the appellants' motion to disqualify the regular UMWA outside counsel from representing the UMWA in this particular action is vacated, and the cause remanded to the District Court for further proceedings in accordance with this opinion.