COMMUNITY BROADCASTING OF BOSTON, INC., Petitioner,

v.

FEDERAL COMMUNICATIONS COMMISSION and United States of America, Respondents,

RKO General, Inc. and Dudley Station Corporation, Intervenors.

No. 76–1526.

United States Court of Appeals, District of Columbia Circuit.

Nov. 19, 1976.

Thomas H. Truitt, Charles Fabrikant, and Robert B. Cornell, Washington, D. C., were on the motion for petitioner.

Ashton R. Hardy, Gen. Counsel, F. C. C., Daniel M. Armstrong, Associate Gen. Counsel, F. C. C., and Sheldon M. Guttmann and Thomas R. King, Jr., Attys., F. C. C., Washington, D. C., were on the motion for respondent Federal Communications Commission.

Barry Grossman and John J. Powers, III, Attys., Dept. of Justice, Washington, D. C., were on the motion for respondent United States of America.

Harold David Cohen and J. Laurent Scharff, Washington, D. C., were on the motion for intervenor RKO General, Inc.

Joseph F. Hennessey, Washington, D. C., was on the motion for intervenor Dudley Station Corp.

Before WRIGHT, TAMM and MacKINNON, Circuit Judges.

**PER CURIAM:**

Petitioner Community Broadcasting of Boston, Inc. (Community) seeks judicial review of an order of the Federal Communications Commission (FCC) denying Community's petition to disqualify the law firm of Pierson, Ball & Dowd (PB&D) from representing intervenor RKO General, Inc. (RKO) in proceedings before the agency. The FCC and RKO move to dismiss Community's petition for review on the ground that the agency's refusal to disqualify is an interlocutory order and therefore not reviewable at this stage of the litigation.[1] We are persuaded that policy considerations disfavoring "piecemeal litigation"[2] outweigh the potential costs of withholding appellate review until after final agency action. We therefore conclude that the order refusing to disqualify counsel is a nonappealable interlocutory order and dismiss Community's petition for review.

I

The underlying agency action grows out of RKO's application to renew its television broadcast license for WNAC–TV in Boston and the competing applications filed by Community and intervenor Dudley Station Corporation. On December 30, 1975 Community petitioned the FCC to disqualify RKO's attorneys, PB&D, on the ground that one of the firm's partners, Dean Burch, had previously participated in preliminary rulings on the RKO application during his tenure as chairman of the FCC.

The facts surrounding the petition to disqualify are not in dispute. PB&D has continuously represented RKO and its predecessor companies in broadcast matters since 1945, and has participated in the present

---

1. Intervenor RKO moves, in the alternative, to have Community's petition treated as a petition for a writ of mandamus and summarily denied by this court. Community has not sought a writ and, indeed, emphatically urges that its petition for review not be treated as a petition for a writ of mandamus.

2. See United States v. Nixon, 418 U.S. 683, 690, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 170, 171, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974); Cobbledick v. United States, 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783 (1940); Williams v. Mumford, 167 U.S.App.D.C. 125, 511 F.2d 363, 366, cert. denied, 423 U.S. 828, 96 S.Ct. 47, 46 L.Ed.2d 46 (1975); United States v. Perkins, 140 U.S.App. D.C. 76, 433 F.2d 1182, 1184, 1185 (1970); Thermal Ecology Must Be Preserved v. AEC, 139 U.S.App.D.C. 366, 433 F.2d 524, 526 (1970).

license renewal application since the date of filing on December 31, 1968, prior to Dean Burch's joining the FCC in October 1969. Burch left the FCC in March 1974 and joined PB&D in January 1975. Although at the time Burch joined the firm Community had long been embroiled in the licensing contest, Community first petitioned the agency for disqualification of PB&D on December 30, 1975. In affidavits submitted to the FCC Burch attested that he had not shared any confidential or inside FCC information with any member of the firm and, indeed, had no recollection of any such information.

On June 1, 1976 the FCC issued an extensive order denying Community's petition to disqualify PB&D. 59 F.C.C.2d 641. Thereafter, on June 15, the agency denied Community's petition for stay of its earlier order. On June 11, 1976 Community petitioned this court for review of the FCC order denying disqualification and moved for a stay of agency proceedings pending judicial determination of the appeal. On June 25, 1976 a division of this court denied Community's motion for a stay. Community's petition for rehearing *en banc* was denied on July 9, 1976. In moving to dismiss Community's petition for review, the FCC and RKO now raise a jurisdictional question that this court has never had an opportunity to address: whether refusal by an agency to disqualify counsel on ethical grounds should be subject to immediate judicial review.

**II**

▐  Pursuant to 28 U.S.C. § 2342(1) (1970) federal Courts of Appeals possess exclusive jurisdiction to review "final orders of the Federal Communications Commission  *  *  *." The finality requirement of Section 2342(1) is the counterpart to that of 28 U.S.C. § 1291 (1970) which governs appeals from final orders of federal District Courts. Both provisions reflect the reasoned policy judgment that the judicial and administrative processes should proceed with a minimum of interruption.[3] To effectuate this common purpose, courts have permitted interlocutory appeals under both statutes only in exceptional cases,[4] a requirement that partakes of similar meanings in both contexts.[5] In analyzing whether to allow an appeal from the agency's order in the present case, therefore, we can freely look to decisions involving appeals from District Court orders denying motions to disqualify counsel.

**III**

▐  In order to ameliorate the harshness of the finality requirement of Section 1291, the Supreme Court fashioned, in *Cohen v. Beneficial Industrial Loan Corp.,* 337 U.S. 541, 546–547, 69 S.Ct. 1221, 1226, 93 L.Ed. 1528 (1949), a "collateral order" exception to the finality rule. The *Cohen* exception allows immediate appeals from certain orders that do not fully and finally terminate the litigation between the parties.[6] The

---

3.  *Compare United States v. Nixon, supra* note 2, 418 U.S. at 690, 94 S.Ct. 3090, and *Cobbledick v. United States, supra* note 2, 309 U.S. at 325, 326, 60 S.Ct. 540 (§ 1291), *with Port of Boston Marine Terminal Ass'n v. Rederiaktiebolaget Transatlantic,* 400 U.S. 62, 71, 91 S.Ct. 203, 27 L.Ed.2d 203 (1970), *and Thermal Ecology Must Be Preserved v. AEC, supra* note 2, 433 F.2d at 526 (§ 2342).

4.  *Compare United States v. Nixon, supra* note 2, 418 U.S. at 691, 94 S.Ct. 3090; *Eisen v. Carlisle & Jacquelin, supra* note 2, 417 U.S. at 172, 94 S.Ct. 2140, *and Cohen v. Beneficial Indus. Loan Corp.,* 327 U.S. 541, 546, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (§ 1291), *with Thermal Ecology Must Be Preserved v. AEC, supra* note 2, 433 F.2d at 526 (§ 2342).

5.  For example, in a similar situation this court in *Environmental Defense Fund, Inc. v. Ruckelshaus,* 142 U.S.App.D.C. 74, 439 F.2d 584, 589–590 n.8 (1971), viewed the refusal of the Secretary of Agriculture to suspend registrations of certain pesticides as analogous to a District Court's denial of a temporary restraining order, which may be appealable in certain circumstances under 28 U.S.C. § 1291.

6.  *Cohen* allowed an appeal from a District Court order denying a corporation's motion to require plaintiffs in a shareholders' derivative action to give security for expenses.

Supreme Court outlined several prerequisites to appeal from an interlocutory order. First, the order must be a final determination of a claim of right "separable from, and collateral to," the rights asserted in the main action.[7] Second, the order must present "a serious and unsettled question," rendering it "too important to be denied review." [8] Finally, an immediate appeal must be necessary to preserve rights that would otherwise be lost on review from final judgment.[9] In conclusion the Court in *Cohen* emphasized that the finality requirement should be given "practical rather than a technical construction." [10]

The collateral order doctrine of *Cohen* has spawned a variety of approaches to the issue of appealability of orders denying motions to disqualify counsel. The Ninth Circuit has ruled that a disappointed litigant may not have immediate review of an order denying a motion to disqualify.[11] Nevertheless, in *Cord v. Smith*, 338 F.2d 516, 521–522 (9th Cir. 1964), *clarified*, 370 F.2d 418 (9th Cir. 1966), the Ninth Circuit treated the aborted appeal as a petition for a writ of mandamus and proceeded to rule on the merits of the disqualification claim.

The sequence of decisions by the Second Circuit highlights the conflicts generated by this question. In *Fleischer v. Phillips*, 264 F.2d 515, 516–517 (2d Cir.), *cert. denied*, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959), the Second Circuit overruled an earlier case [12] in which it had held appealable a denial of a motion to disqualify. In an opinion by Chief Judge Clark the court in *Fleischer* distinguished between appeals from orders granting disqualification and those denying disqualification,[13] concluding that, for the sake of judicial economy,[14] immediate appeals would not be allowed in the latter situation.

The case of *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.*, 496 F.2d 800 (2d Cir. 1974), marked a turning point in the tortuous history of Second Circuit cases. Sitting *en banc*, the court overruled *Fleischer* [15] and held that denials of motions to disqualify are immediately appealable under the *Cohen* doctrine. Echoing the concern of several other courts,[16] *Silver Chrysler* emphasized that an appeal from final judgment will come too late to undo the damage wrought by the continued participation of an attorney who should have been

---

**7.** 337 U.S. at 546, 69 S.Ct. at 1226.

**8.** *Id.*

**9.** *Id.*

**10.** *Id.* at 546, 69 S.Ct. at 1226.

**11.** *See Chugach Electric Ass'n v. United States District Court for the District of Alaska*, 370 F.2d 441, 442 (9th Cir. 1966), *cert. denied*, 389 U.S. 820, 88 S.Ct. 40, 19 L.Ed.2d 71 (1967); *Cord v. Smith*, 338 F.2d 516, 521–522 (9th Cir. 1964), *clarified*, 370 F.2d 418 (9th Cir. 1966).

**12.** *Harmar Drive-In Theatre, Inc. v. Warner Bros. Pictures, Inc.*, 239 F.2d 555, 556 (2d Cir. 1956), *rehearing denied*, 241 F.2d 937 (2d Cir.), *cert. denied*, 355 U.S. 824, 78 S.Ct. 31, 2 L.Ed.2d 38 (1957).

**13.** [T]he finality of the two orders is as dissimilar as their results. An order granting disqualification seriously disrupts the progress of the litigation and decisively sullies the reputation of the affected attorney; but one refusing such relief merely allows the action to proceed and has no permanent effect of any kind. Here, as with a motion to dismiss an action or to grant summary judgment, while the affirmative grant of the requested relief is final and appealable, a mere refusal to act is necessarily less conclusive and ought not to be reviewed by this court. * * *
*Fleischer v. Phillips*, 264 F.2d 515, 517 (2d Cir.), *cert. denied*, 359 U.S. 1002, 79 S.Ct. 1139, 3 L.Ed.2d 1030 (1959).

**14.** *Id.* The court also noted the delays entailed in shuttling between appellate and trial courts. *Id.*

**15.** The court also overruled *Marco v. Dulles*, 268 F.2d 192, 193 (2d Cir. 1959).

**16.** *See, e. g., Greene v. Singer Co.*, 509 F.2d 750, 751 (3d Cir. 1971); *Cord v. Smith, supra* note 11, 338 F.2d at 521–522.

disqualified.[17] The Third,[18] Fifth,[19] Sixth,[20] and Tenth[21] Circuits now are in agreement with the Second in allowing appeals from denials of motions to disqualify.

## IV

Until the present case this court has not had occasion to adopt a position on the appealability of orders denying motions to disqualify counsel on ethical grounds.[22] Our decisions in *Yablonski v. United Mine Workers,* 145 U.S.App.D.C. 252, 448 F.2d 1175 (1971) (*Yablonski I*), and *Yablonski v. United Mine Workers,* 147 U.S.App.D.C. 193, 454 F.2d 1036 (1971) (*Yablonski II*), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972), were predicated on the unique set of circumstances underlying those two motions to disqualify. Plaintiffs in the *Yablonski* cases sued the UMW and several of its officers under Section 501(b) of the Labor-Management Reporting and Disclosure Act[23] (LMRDA) for an accounting of union funds. The union's regular outside counsel, which initially represented the union and its officers, withdrew as counsel for the officers. The District Court denied plaintiffs' motion to disqualify the firm from representing the union and, on appeal in *Yablonski I,* this court vacated that order.[24] In light of the firm's representation of the individual officers in other proceedings, this court found that the firm's

continued representation of the union would undercut the objectives of the LMRDA[25] and the public interest in having the charges "determined in a context which is as free as possible from the appearance of any potential for conflict of interest in the representation of the union itself."[26]

Not until *Yablonski II* did this court discuss the question of appealability. *Yablonski II* grew out of the proceedings on remand from *Yablonski I.* Although the union's general counsel and his staff had previously represented the individual officers in other proceedings, the District Court refused to bar them from representing the union on remand. Rather than taking an appeal, plaintiffs sought a writ of mandamus. We granted the petition in order to "confine [the] lower court to the terms of [this] appellate tribunal's mandate."[27] We then explained that in *Yablonski I* immediate review was necessary to prevent serious erosion of the legislative policy embodied in the LMRDA.[28] We underscored the *sui generis* nature of *Yablonski I* and left open the question whether denials of motions to disqualify should generally be subject to immediate review.[29]

## V

■ We think it appropriate at this time to announce a general rule applicable to all appeals from orders denying motions to dis-

---

**17.** *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp.,* 496 F.2d 800, 804–805 (2d Cir. 1974).

**18.** *See Kroungold v. Triester,* 521 F.2d 763, 765 (3d Cir. 1975); *American Roller Co. v. Budinger,* 513 F.2d 982, 983 (3d Cir. 1975); *Greene v. Singer Co., supra* note 16, 509 F.2d at 751.

**19.** *See Uniweld Products, Inc. v. Union Carbide Corp.,* 385 F.2d 992, 994 (5th Cir. 1967), *cert. denied,* 390 U.S. 921, 88 S.Ct. 853, 19 L.Ed.2d 980 (1968); *cf. Tomlinson v. Florida Iron & Metal, Inc.,* 291 F.2d 333, 334 (5th Cir. 1961).

**20.** *See Melamed v. ITT Continental Baking Co.,* 534 F.2d 82, 84 (6th Cir. 1976).

**21.** *See Fullmer v. Harper,* 517 F.2d 20, 21 (10th Cir. 1975).

**22.** *In re Investigation Before April 1975 Grand Jury,* 174 U.S.App.D.C. 268, 531 F.2d 600, 605

n.8 (1976), and *Brown v. Miller,* 52 App.D.C. 330, 286 F. 994 (1923), involved appeals from orders granting motions to disqualify. Those cases are discussed in note 41 *infra.*

**23.** 29 U.S.C. § 501(b) (1970).

**24.** 448 F.2d at 1182.

**25.** We emphasized that the specific purpose of the LMRDA was to achieve a high standard of responsibility and ethical conduct in administering the affairs of unions. 448 F.2d at 1178 n.8.

**26.** 448 F.2d at 1179–1180.

**27.** 454 F.2d at 1038–1039.

**28.** *Id.*

**29.** *Id.* at 1038 n.9.

qualify counsel on ethical grounds.[30] We decline to adopt the approach taken by the Second Circuit and other circuits that have embraced *Silver Chrysler*. A rule allowing interlocutory appeals here would provide litigants with yet another device by which to delay final determination on the merits, and would lead the court to divert its attention from the central issues in the case.[31]

The experience of the Second Circuit since its decision in *Silver Chrysler* highlights the wisdom of adhering to the finality requirement. As Judge Moore predicted in *Silver Chrysler*, charges of conflict of interest and motions to disqualify have not abated in that circuit.[32] Indeed, because of the fluidity of membership in large metropolitan law firms and the pattern of movement by lawyers between various employment positions,[33] an appearance of conflict of interest can easily be alleged in many cases.[34] As a result the Second Circuit is now grappling with a deluge of interlocutory appeals that would cast the Court of Appeals in the role of overseer of the ethics of members of the legal profession.[35] Although *Silver Chrysler* purported to fashion an across-the-board principle governing disqualification orders, application of that principle inevitably requires a case-by-case examination of the merits of each order.[36] Apparently in response to the resulting flood of interlocutory appeals, the *Silver Chrysler* decision has been followed in the Second Circuit by a series of cases narrowing the substantive grounds for disqualification.[37]

■ We believe our position denying interlocutory appeal of orders refusing to disqualify counsel to be fully consonant with the Supreme Court's holding in *Cohen*.[38]

---

**30.** Cf. *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra* note 17, 496 F.2d at 805 (noting the need "to dispel the needless uncertainty as to the law and procedure relating to the appealability of disqualification orders").

**31.** See *W. T. Grant Co. v. Haines,* 531 F.2d 671, 678 (2d Cir. 1976).

**32.** 496 F.2d at 803.

**33.** *Id.* This "revolving door" phenomenon is particularly pronounced in legal practice in the District of Columbia. *See* Moskowitz, *Can D.C. Lawyers Cut the Ties That Bind?,* Juris Doctor, Sept. 1976, at 34–37.

**34.** See *W. T. Grant Co. v. Haines, supra* note 31, 531 F.2d at 677.

**35.** See *id.* at 672, 677–678; *International Electronics Corp. v. Flanzer,* 527 F.2d 1288, 1289 (2d Cir. 1975); *Lefrak v. Arabian American Oil Co.,* 527 F.2d 1136, 1139 (2d Cir. 1975).

**36.** In *Handwerger v. Ginsberg,* 519 F.2d 1339, 1342 (2d Cir. 1975), the Second Circuit refused to hear an appeal from an order declining to disqualify counsel for plaintiffs in a class action. The Fifth Circuit reached the same conclusion in a shareholders' derivative suit on behalf of a corporation. *Glenn v. Arkansas Best Corp.,* 525 F.2d 1216, 1217 (5th Cir. 1976). In both cases the disqualification claim was held not to be "collateral" under *Cohen* because the disqualification claim was entwined with the issue of whether counsel was a proper representative of the class of plaintiffs. In *Greene v. Singer Co., supra* note 16, 509 F.2d at 751 & n.3, the Third Circuit acknowledged that

under the holding in that case decisions as to appealability of orders denying disqualification will have to be made on an *ad hoc* basis.

**37.** See generally Note, *The Second Circuit and Attorney Disqualification—Silver Chrysler Steers in a New Direction,* 44 Fordham L.Rev. 130 (1975).

Second Circuit cases announcing these new substantive standards emphasize the trial court's discretion in ruling on motions to disqualify. *See W. T. Grant Co. v. Haines, supra* note 31, 531 F.2d at 676; *Lefrak v. Arabian American Oil Co., supra* note 35, 527 F.2d at 1140; *Hull v. Celanese Corp.,* 513 F.2d 568, 571 (2d Cir. 1975). *See also Waters v. Western Co. of North America,* 436 F.2d 1072, 1073 (10th Cir. 1971). Professional misconduct does not by itself warrant disqualification of counsel in the Second Circuit. *See W. T. Grant Co. v. Haines, supra* note 31, 531 F.2d at 676.

**38.** *Cohen v. Beneficial Indus. Loan Corp., supra* note 4. Indeed, another court has noted that the holding in *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra* note 17, departs from the mainstream of Second Circuit decisions under the *Cohen* doctrine. *See Grinnell Corp. v. Hackett,* 519 F.2d 595, 597–598 n.4 (1st Cir.), *cert. denied, sub nom., Chamber of Commerce v. United Steelworkers,* 423 U.S. 1033, 96 S.Ct. 566, 46 L.Ed.2d 407 (1975). In earlier cases the Second Circuit had held that under *Cohen* a crucial factor in assessing the "importance" of the unresolved issue was whether resolution of that issue would settle the matter for other litigants as well as for those before the court. *See, e. g., Donlon Industries, Inc. v.*

Although "collateral" to the main proceeding, an order denying a motion to disqualify does not, in most cases, implicate any claim of right that will be irreparably lost on appeal from final judgment.[39] In the exceptional case, where irreparable harm would indeed result, the movant may petition this court for a writ of mandamus under 28 U.S.C. § 1651 (1970),[40] the All Writs Act. This approach will afford the court the flexibility necessary to prevent serious injustice while advising litigants of the court's extreme reluctance to depart from the final judgment rule.[41]

In an analogous situation courts have held that in extraordinary cases parties may seek immediate review of nonappealable interlocutory discovery orders by resorting to § 1651. *See, e. g., Schlagenhauf v. Holder,* 379 U.S. 104, 110–112, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964); *National Right to Work Legal Defense v. Richey,* 169 U.S.App.D.C. 18, 510 F.2d 1239, 1242–1243, 1244–1246, *cert. denied,* 422 U.S. 1008, 95 S.Ct. 2631, 45 L.Ed.2d 671 (1975); *Colonial Times, Inc. v. Gasch,* 166 U.S.App.D.C. 184, 509 F.2d 517, 523–526 (1975); *Donnelly v. Parker,* 158 U.S.App.D.C. 335, 486 F.2d 402, 405–410 (1973); *American Express Warehousing, Ltd. v. Transamerica Ins. Co., supra* note 38, 380 F.2d at 282 (noting also the availability of certification under § 1291(b)).

We do not now consider Community's entitlement to relief under the alternative procedures proposed. No provision exists for certification of agency orders, and Community has emphatically advised the court that it does not seek a writ of mandamus. Moreover, the papers submitted to the court do not present sufficient factual material to enable us to determine whether to issue a writ of mandamus.

*Forte,* 402 F.2d 935, 937 (2d Cir. 1968); *American Express Warehousing, Ltd. v. Transamerica Ins. Co.,* 380 F.2d 277, 280 (2d Cir. 1967). If "importance" has the meaning given it in those other cases, then "it is difficult to understand how every order refusing to disqualify is 'important.'" *Grinnell Corp. v. Hackett, supra,* 519 F.2d at 598 n.4.

**39.** *See Cohen v. Beneficial Indus. Loan Corp., supra* note 4, 337 U.S. at 546, 69 S.Ct. 1221. In *Silver Chrysler Plymouth, Inc. v. Chrysler Motors Corp., supra* note 17, 496 F.2d at 805, the Second Circuit stated that an order denying a motion to disqualify "has grave consequences to the losing party, and it is fatuous to suppose that review of the final judgment will provide adequate relief." The apparent conflict between this assumption and the conclusion reached by this court disappears upon close analysis of the more recent cases decided by the Second Circuit. Although *Silver Chrysler* appears to create a presumption that continued representation by the challenged attorney will irrevocably taint the subsequent proceedings, the Second Circuit now requires that the losing party demonstrate on appeal that the challenged behavior will in fact taint the underlying trial. *See W. T. Grant Co. v. Haines, supra* note 31, 531 F.2d at 677, 678. Moreover, the Second Circuit has narrowed its definition of "taint": the losing party must now show injury to himself, not merely harm to the judicial system from an "appearance of impropriety." *Cf. id.* at 676. Accordingly, the irreparable harm referred to in *Silver Chrysler* will be present in only a relatively small number of disqualification cases and, in practice, little is left of the foundation upon which the *Silver Chrysler* doctrine was constructed.

**40.** *See, e. g., Yablonski II,* 147 U.S.App.D.C. 193, 454 F.2d 1036, 1038–1039 (1971), *cert. denied,* 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972); *Chugach Electric Ass'n v. United States District Court for the District of Alaska, supra* note 11, 370 F.2d at 442.

Alternatively, if the disqualification motion raises an important, unresolved question of law, the movant may seek certification under 28 U.S.C. § 1292(b) (1970). *Cf. E. F. Hutton & Co. v. Brown,* 305 F.Supp. 371, 402–403 (S.D. Tex.1969) (certification of order disqualifying counsel).

**41.** *See generally* 9 J. Moore, Federal Practice ¶ 110.10 at 136 (2d ed. 1975) (outlining why "[m]andamus seems inherently preferable to affording an appeal as of right"). For discussions of the principles governing issuance of the writ, *see Colonial Times, Inc. v. Gasch, supra* note 41, 509 F.2d at 523–526; *Donnelly v. Parker, supra* note 41, 486 F.2d at 405–410.

Today's decision is not inconsistent with this court's holding in *In re Investigation Before April 1975 Grand Jury, supra* note 22, 531 F.2d at 605 n.8. There we allowed an immediate appeal from an order that, in effect, *disqualified* counsel from representing more than one subpoenaed grand jury witness. In that case, however, the order appealed from did in fact qualify under *Cohen* as a final one: because of the nature of the proceeding there would have been no subsequent final judgment from which an appeal could have been taken. Moreover, the court itself recognized that the collateral order doctrine of *Cohen* should be applied more expansively in a grand jury context since allowing such appeals is less likely to involve the mischief of economic waste and delayed justice. *Id. See United States v. Wilson,* 421 U.S. 309, 318, 95 S.Ct. 1802, 44 L.Ed.2d 186 (1975).

Accordingly, the motion to dismiss Community's petition for review is granted.

*So ordered.*