**Robert MESSING et al., Plaintiffs,**

v.

**FDI, INC., et al., Defendants.**

**Civ. A. No. 74–1687.**

United States District Court,
D. New Jersey.

Nov. 3, 1977.

---

7. *Stipulation of Jail Guards* (Tr., 12–8–76, at 242–246); Testimony of Stanley Kubiak (Tr. 12–9–76, at 21–22).

Kasen & Kraemer, Newark, N. J., for plaintiffs.

Sills, Beck, Cummis, Radin & Tischman, Newark, N. J., for defendants FDI, Inc., Harvey A. Braun, Daniel Gregg, Ronald B. Peltz, Richard Carr, Richard W. Palmer and Saul G. Stillman.

McCarter & English, Newark, N. J., for defendant Jeffrey A. Cole.

Lamb, Hutchinson, Chappell, Ryan & Hartung, Jersey City, N. J., for defendants Melvin E. Pearl and Katten, Muchin, Gittles, Zavis, Pearl & Galler.

Conway, Reiseman, Michals, Wahl, Bumgardner & Hurley, Newark, N. J., for defendant Joseph, Miller & Russell, Inc.

Clapp & Eisenberg, Newark, N. J., Jones, Day, Reavis & Pogue, Cleveland, Ohio, for defendant Prescott, Ball & Turben.

## OPINION

STERN, District Judge.

In this derivative action, shareholders of FDI, Inc., charge violations of the Securities Act of 1934, 15 U.S.C. §§ 78a *et seq.* Specifically, they seek relief based on Rules 14a–9 and 10b–5, 17 C.F.R. §§ 240.14a–9 and 240.10b–5, promulgated under 15 U.S.C. §§ 78b and 78j(b), respectively, predicated on the alleged fraud of some of the directors and the alleged negligence of the remaining directors. Plaintiffs also assert pendent state law claims of negligence, fraud, waste, and breach of fiduciary duty. At issue now is the question whether the defendant directors may share counsel with the corporation, which appears as a nominal defendant. Also before the Court are the motions of one of the defendants to dismiss cross-claims which have been asserted against it.

The relevant allegations of the amended complaint are as follows. FDI, Inc. ("FDI") was formed in October, 1974 as a result of the merger of Rayco International, Inc. ("Rayco") and Filter Dynamics International, Inc. ("Filter"). One of the primary purposes of the merger—according to the joint proxy statement distributed to shareholders

of Filter and Rayco—was to confer a tax benefit on the successor corporation by enabling it to offset Rayco's huge losses against Filter's projected high earnings. This purported tax benefit was treated as an actual asset of Rayco for purposes of determining the exchange ratio at which FDI shares would issue to the shareholders of Filter and Rayco. However, as a result of a change in Filter's inventory valuation, along with rising costs of raw materials and uncertainties in the tax laws—none of which were disclosed in the proxy statement—this tax benefit was not and could not be realized. Hence, or so plaintiffs allege, the joint proxy statement was false and misleading, FDI shares were issued at an excessively low price, and Rayco shares were purchased by FDI at an excessively high price.

Some of the numerous defendants in this action are charged with negligence in connection with this merger; others with outright fraud. The allegations of fraud are leveled against defendants Braun, Gregg, Peltz and Pearl. Prior to the merger, defendants Braun, Gregg, Peltz (the "insiders") served as directors of Filter; defendant Pearl was a member of the defendant law firm Katten, Muchin, Gittles, Zavis & Galler (the "Katten firm"), general counsel to both Filter and Rayco. It is alleged that defendant Pearl and the insiders controlled 42% of the stock of Rayco and that, as a result of various transactions not relevant here, they had personally assumed in excess of two million dollars of Rayco's liabilities. Thus, it is alleged, these defendants helped bring about the merger for the purpose of simultaneously ridding themselves of their control of Rayco and their consequent personal indebtedness.

The other defendants are charged with negligence in failing to detect that fraud. Specifically, it is alleged that the remaining directors of Filter, defendants Carr, Palmer, Cole and Stillman (the "outsiders") failed to act with due diligence when they

approved the merger of Filter and Rayco. Also charged with negligence for their participation in the merger is the Katten firm, and defendants Prescott, Ball & Turben ("PBT"), and Joseph Miller and Russell, two investment firms engaged by Filter and Rayco, respectively, to opine on the fairness of the proposed exchange ratio.

*I. Motion of PBT to Dismiss Cross-claim of FDI.*

Although named as only a nominal defendant, FDI has taken an active role in this litigation by asserting in its own right a cross-claim against PBT. The first two counts of this cross-claim seek indemnification from PBT in the event that plaintiffs prevail and the exchange ratio at which FDI shares were issued is deemed to have been unfair. The third and fourth counts allege, respectively, negligence and breach of contract arising out of PBT's alleged failure to maintain adequate documentation of the manner in which it determined that the suggested exchange ratio was fair.

■ The portion of FDI's cross-claim against PBT which seeks indemnification from PBT in the event that plaintiffs prevail must be dismissed for failure to state a claim upon which relief can be granted, under Rule 12(b)(6), Federal Rules of Civil Procedure.[1]

Plaintiffs seek no recovery from the corporation. Quite the contrary. Any determination that the exchange ratio was unfair will inure to the corporation's *benefit*, not to its detriment. If plaintiffs prevail, the corporation prevails; for the corporation, although a nominal defendant, is the real plaintiff in this action. Therefore, this Court perceives no basis for any claim of indemnification by FDI against PBT.

■ Counts three and four of the cross-claim stand on a different footing and do state a claim. The allegations contained in these counts state an independent basis upon which the corporation may recover in

1. However, in view of this Court's ruling that FDI must secure new counsel, *see* Part III *infra*, the dismissal of this cross-claim is without prejudice to any claims for indemnification which FDI's new counsel may wish to assert.

its own right should it be found that PBT breached a duty to FDI, contractual or otherwise, to maintain records of the manner in which it arrived at its recommended exchange ratio, and that FDI was injured thereby.

Accordingly, PBT's motion is granted as to counts one and two of FDI's cross-claim; it is denied as to counts three and four.

## II. PBT's Motion to Dismiss Cross-claims of Defendants Pearl and the Katten Firm.

■ Defendants Pearl and the Katten firm have asserted a cross-claim for indemnification against PBT for any and all sums for which they may be found liable. This cross-claim must be dismissed for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Federal Rules of Civil Procedure.

This cross-claim is premised on the notion that defendants Pearl and the Katten firm were, if anything, "passive" tortfeasors while PBT was the "active" tortfeasor.[2] However, defendants Pearl and the Katten firm could be held liable in this action only if they are found to have been in some way culpable.[3] Indemnification lies only where a party free from fault is required by operation of law to answer for the fault of another. See, e. g., Tormo v. Yormark, 398 F.Supp. 1159, 1176 (D.N.J.1975). Since defendants Pearl and the Katten firm are being sued, respectively, for their own fraud and negligence, this Court can perceive no basis upon which they can obtain indemnification from PBT.

**2.** Defendants Pearl and the Katten firm have apparently asserted this cross-claim jointly because they are represented by the same law firm, Lamb, Hutchinson, Chappell, Ryan & Hartung. The propriety of this arrangement will be addressed at Part III, *infra.*

**3.** The state claims asserted—waste, fraud, negligence and breach of fiduciary duty—are all clearly "fault" claims. Similarly, the federal securities claims asserted here also require proof of fault. See *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (scienter is a prerequisite to liability under Rule 10b–5); and *Gould v. American-Ha-*

## III. PBT's Motion for Disqualification.

■ PBT has brought to this Court's attention the fact that the same counsel represents FDI, two of the outsiders (defendants Carr and Stillman) and all of the insiders (defendants Braun, Gregg and Peltz).[4] That PBT has standing to challenge this arrangement, although not a party to it, seems well-settled by recent case law. See *Richardson v. Hamilton International Corp.,* 469 F.2d 1382, 1385–1386 (3rd Cir. 1972), *cert. denied,* 411 U.S. 986, 93 S.Ct. 2271, 36 L.Ed.2d 964 (1973); *Estates Theatres, Inc. v. Columbia Pictures Industries,* 345 F.Supp. 93, 98 (S.D.N.Y.1972).

PBT points out two possible conflicts inherent in the joint representation of these defendants: (1) the conflicting interests of the corporation and all of the directors; and (2) the conflicting interests of the insiders, who have been accused of fraud, and the outsiders, who have been charged with negligence in failing to detect that fraud. Accordingly, PBT moves this Court to disqualify the Weston-Sills firms from any further participation in this litigation and to appoint new counsel for FDI.

The local rules of this Court provide that New Jersey Court rules shall govern the conduct of attorneys who appear in this Court. See Rule 6 (as amended), Rules of the United States District Court for District of New Jersey. Rule 1:14 of the New Jersey Court rules incorporates the Disciplinary Rules of the Code of Professional Responsibility adopted by the American Bar Association. Thus, we are led to the applicable disciplinary rule DR5–105.[5] That rule

*waiian Steamship Co.,* 535 F.2d 761, 778–779 (3rd Cir. 1976) (no strict liability under Rule 14a–9).

**4.** These defendants are represented by Weston, Hurd, Fallon, Paisley & Howley and locally through Sills, Beck, Cummis, Radin & Tischman. These firms will hereinafter be jointly referred to as the "Weston-Sills firms".

**5.** DR5–105 Refusing to Accept or Continue Employment Interests of Another Client May Impair the Independent Professional Judgment of the Lawyer.

provides that a lawyer may not represent multiple clients with adverse interests unless each client consents after full disclosure of the conflicts which might arise in their joint representation. Because a corporation acts only through its board of directors, and, here, all but two of FDI's directors are parties to this litigation, very different issues are presented with respect to each of the two conflicts asserted by PBT.

### A. Joint Representation of the Corporation and the Directors.

The propriety of the joint representation of a corporation and the directors in a derivative action is a question on which there is some division of authority. The only decision in this Circuit is *Otis & Co. v. Pennsylvania R. Co.*, 57 F.Supp. 680 (E.D. Pa.1944), aff'd 155 F.2d 522 (3rd Cir. 1946) (*per curiam*). In that case, the corporation shared counsel with directors accused of breach of fiduciary duty. Although dealing only briefly with the issue, the district court held that such an arrangement was proper, at least in the absence of "any allegation of breach of confidence or trust" by a party to the attorney-client relationship. 57 F.Supp. at 684.

More recent decisions appear to have adopted the position that directors accused of *fraud* may not share counsel with the corporation in a derivative shareholder's action. Thus, in *Lewis v. Shaffer Stores Co.*, 218 F.Supp. 238 (S.D.N.Y.1963), the court held that the corporation could not share counsel with individual directors accused of defrauding the corporation. The court not-

ed that "[u]nder all the circumstances, including the nature of the charges . . . it would be wise for the corporation to retain independent counsel, who have had no previous connection with the corporation, to advise it as to the position it should take in this controversy." *Id.*, at 240. In *Cannon v. U. S. Acoustics Co.*, 398 F.Supp. 209 (D.Ill.1975), aff'd in relevant part, 532 F.2d 1118, 1119 (7th Cir. 1976) (*per curiam*) the district court disqualified counsel from simultaneously representing the corporation and the individual directors accused of fraud, noting not only the conflicting interests of these defendants, but also the possibility that confidences obtained from one client might be used to the detriment of the other.[6]

The nature of the allegations against the directors is but one factor that has been considered in determining the propriety of the joint representation of the corporation and the directors in a derivative action. The Association of the Bar of New York Committee on Ethics, while recognizing that a conflict of interests is always inherent in such arrangements, has indicated that the corporation should obtain independent counsel whenever the corporation elects to take an *active role* in the litigation. *Op.* 842, 15 Record N.Y.C.B.A. (1960). By contrast, commentators appear to have taken the broader view that the corporation should *always* be separately represented in a derivative action. *See, e. g.*, Henn, Corporations § 370 (2d Ed. 1970); 13 Fletcher Corporations § 6025 (rev. ed. 1970). Note,

---

(A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR5–105(C).

(B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR5–105(C).

(C) In situations covered by DR5–105(A) and (B) except as prohibited by rule, opinion, directive or statute, a lawyer may represent multiple clients if he believes that he can

adequately represent the interests of each and if each consents to the representation after full disclosure of the facts and of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

. . . . .

**6.** Other courts have likewise focused upon the diverse interests of the corporation and directors accused of fraud and prohibited their joint representation. *See, e. g., Niedermeyer v. Niedemeyer*, CCH Fed.Sec.L.Rep. [1973 Transfer Binder] ¶ 94.123 (D.Or.1973); *Rowen v. Le-Mars Mutual Insurance Co. of Iowa*, 230 N.W.2d 905 (Iowa 1975).

*Independent Representation for Corporate Defendants in Derivative Suits*, 74 Yale L.J. 524 (1965).[7]

This Court perceives no basis for relying upon the nature of the charges against the directors for purposes of determining whether they may share counsel with the corporation. Irrespective of the nature of the charges against the directors—whether it be fraud or negligence—the interests of the two groups will almost always be diverse. Nor can we readily perceive the need for independent counsel turning upon the question whether the corporation has already elected to pursue an active or passive stance in the litigation, for that very election may have already been tainted by conflict. Moreover, just as it should be recognized that the corporate entity has a legitimate interest in recovering the fruits of past mismanagement or fraud on the part of its own directors, so too, it has a legitimate interest, and perhaps a role to play, in the defense of actions which have been frivolously or even wrongfully brought against its directors. The initial decision then as to what role if any the corporation should take must in the first instance be made completely free from any actual or apparent conflict.

■ However, because in the instant case the directors have been accused of fraud and the corporation has elected to take an active stance in the litigation, it is enough for now to decide that, under these combined circumstances, the corporation must retain independent counsel.[8]

■ Independent counsel for the corporation, unshackled by any ties to the directors, would be in the unique position of having only the corporation's interest at stake. For example, in this case, serious questions have been raised as to whether the corporation has expended funds on behalf of the directors in violation of law.[9] Under Delaware law, a corporation may advance monies to the directors for their litigation expenses upon a resolution of the Board of Directors and receipt of an undertaking. § 145(e) Del.Corp.Law. A director is required to repay such expenses in the event that he is ultimately "adjudged to have been liable for negligence or misconduct in the performance of his duty to the corporation." *Id.*, at § 145(b). On oral argument of this motion, Mr. Blackford, present counsel for FDI, conceded that the directors had not posted the undertaking required by Delaware law to ensure repayment of their litigation expenses in the event that it is later determined that they were guilty of misconduct in office. Tr. 9/12/77 at 19. Counsel was also unclear whether FDI had passed the required resolution permitting the corporation to advance the directors' litigation expenses. Tr. 9/12/77 at 34–35. He did indicate that he believed there had been no impropriety, although it was unclear whether he had made that judgment on behalf of his director clients, for whom the funds had been paid

---

7. Similarly, the Court of Appeals for the District of Columbia Circuit, addressing the analogous problem of dual representation of the union and union officials in actions brought on behalf of the union, apparently has indicated that it would always require separate counsel for a corporation in a shareholder's derivative action. *See Yablonski v. United Mine Workers of America*, 145 U.S.App.D.C. 252, 258, 448 F.2d 1175, 1181 (1971), *cert. denied*, 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972).

8. The need for independent counsel is underscored by the duty of counsel for the corporation in a derivative action to safeguard the corporation's interest. While, historically, it has been the role of the plaintiff-shareholders to represent the corporation's interests, as a practical matter, the adequacy of such representation—particularly when the litigation reaches settlement stages—is open to serious doubt. *See*, Note, *Independent Representation for Corporate Defendants in Derivative Suits*, 74 Yale L.J. 524, 532 (1965). Thus, independent counsel for the corporation would be particularly useful in assisting the Court to approve any settlements reached between the plaintiffs and defendants.

9. Since FDI is a Delaware corporation, Delaware law is applicable to the question of reimbursement of the directors' litigation expenses. See *Gross v. Texas Plastics, Inc.*, 344 F.Supp. 564 (D.N.J.1972).

to him, or his corporate client, who had paid those fees.[10]

PBT further contends that present counsel for FDI disregarded the corporation's interest by bringing frivolous cross-claims against PBT on FDI's behalf.[11] However, resolution of this issue, along with the issue of the directors' litigation expenses, will have to await the appointment of new counsel for FDI.

■ Accordingly, this Court will require FDI to retain independent counsel. This Court is next faced with the question of the manner in which such counsel is to be selected.

PBT urges that this Court itself appoint new counsel for FDI, a procedure with some, but scant, support in the case law.[12] Present counsel for FDI has indicated to the Court that the corporation has in the interim appointed an ad hoc committee consisting of the two directors who are not parties to this litigation. If so ordered by the Court, he reports, this committee will retain new counsel for the corporation and supervise the corporation's role in the litigation.[13]

This Court, while not necessarily approving the procedure suggested by present counsel for FDI, will at this time direct only that the corporation resolve this problem as it would any other issue as to which the existence of interested directors renders the usual corporate decision-making process unavailable. Of course, the directors may request this or any other court with jurisdiction over the matter to relieve them of this duty. It may well be that there are other ways to fashion a solution to this problem. However, at this time, this Court declines to itself appoint counsel or to prospectively pass on the method proposed by present counsel for FDI. It is the duty of the directors, in this as in other matters, to act in the corporation's best interest. If they are disqualified from acting on this or on any other matter, then it is for them, in the first instance, to devise a method to accom-

---

10. "MR. BLACKFORD: Your Honor, it is my understanding [that the directors] promised to pay for independent counsel. If they elected to use the corporation's attorney, that they would have to enter into some type of agreement . . . .

THE COURT: Well, is that . . . legally sufficient?

MR. BLACKFORD: In my opinion, it is, your Honor.

THE COURT: On whose behalf are you rendering that opinion?

MR. BLACKFORD: I would . . . think it is both for the corporation and for the individuals , . . .."

Tr. 9/12/77 at 35.

11. PBT alleges that, under the terms of its agreement with FDI, the corporation is required to reimburse it for litigation expenses incurred in connection with the merger in the event that PBT is found not to have been negligent. Accordingly, PBT questions on whose behalf—the directors' or the corporations's—the cross-claims were asserted, arguing that truly independent counsel for FDI will not be tempted to jeopardize corporate funds by bringing frivolous cross-claims against a party whom it may be required to reimburse. In any event, this Court agrees that the views of independent counsel for FDI would be beneficial.

12. See Rowen v. LeMars Mutual Insurance Co., 230 N.W.2d 905 (Iowa 1975); Niedermeyer v. Niedermeyer, CCH Fed.Sec.L.Rep. [1973 Transfer Binder] ¶ 94.123 (D.Ore.1973).

Most courts faced with this problem have refused to appoint counsel. · See, e. g., Yablonski v. United Mine Workers of America, 145 U.S.App.D.C. 252, 448 F.2d 1175 (1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1609, 31 L.Ed.2d 816 (1972); Cannon v. U. S. Acoustics Corp., 398 F.Supp. 209 (D.Ill.1975), aff'd, 532 F.2d 1118 (7th Cir. 1976) (per curiam); Lewis · v. Shaffer Stores Co., 218 F.Supp. 238 (S.D.N.Y. 1963).

The Yablonski court noted the anomaly of permitting union officials to choose new counsel for the union, but nevertheless declined court intervention:

We are cognizant that any counsel to represent U.M.W.A. selected by President Boyle will to some degree be under his control. But such counsel will still have only one client—the U.M.W.A.—to represent in matters growing out of the union's affairs.

448 F.2d 1182.

13. Present counsel for FDI apparently seeks Court approval of the arrangements it has made for choosing new counsel. PBT opposes this arrangement, arguing that the two "disinterested" directors may still have emotional or pecuniary ties to the defendant-directors. As indicated below, this Court declines at this time to pass on the parties' contentions with respect to the manner in which counsel for FDI is to be chosen.

modate the need to continue the corporate enterprise while refraining from participating in any corporate decision in which they might have a personal interest. They act, or fail to act, at their peril.

B. *Joint Representation of the Insiders and the Outsiders.*

■ PBT points out a second potential conflict inherent in the representation afforded by the Weston-Sills firms. The outsiders may have an interest in proving that they were deceived by the insiders, an interest disserved by joint representation. This Court agrees that the joint representation of these two groups presents a real potential for conflict. However, in contrast to the question of the joint representation of the directors and the corporation, here there are individuals who are capable of informed consent and who can act independently of each other. Thus, it is this Court's role only to ensure strict compliance with the disclosure requirements of DR5–105, *supra.*

Accordingly, this Court directs the Weston-Sills firms to submit an affidavit stating that it has disclosed to each of its clients the possible conflicts that might arise in its continued representation, and that each of its clients has consented to this arrangement. *Cf. United States v. Garafola,* 428 F.Supp. 620 (D.N.J.1977); Thomas F. Campion and Sharon T. Jacobson, *Representation of Multiple Defendants in Criminal Cases,* (August 9, 1977) (unpublished address to a panel of the Committee on Complex Crimes Litigation, American Bar Association). Perceiving a similar potential for conflict, this Court also directs Lamb, Hutchinson, Chappell, Ryan & Hartung, counsel for defendants Pearl and the Katten firm, to submit a similar affidavit with respect to defendant Pearl and each of the Katten partners.